, Modified.

29 C.C.P.A. (Patents)
NORMA–HOFFMANN BEARINGS COR-
PORATION v. HUFNAGEL.
Patent Appeal No. 4536.

Court of Customs and Patent Appeals.
Dec. 1, 1941.

649

C. P. Goepel, of New York City, for appellant.

Robert M. Zacharias, of Washington, D. C. (Church & Church, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

Appellant here brings before us for review a decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences dismissing appellant's notice of opposition and holding that appellee is entitled, under the Trade-Mark Act of February 20, 1905, 15 U.S. C.A. § 81 et seq., to register his trade-mark "Norma" for use on "boiler compounds, soot destroyers and rust solvents."

Appellant's opposition is based upon its prior adoption, use and registration of the same mark for ball bearings, roller bearings, and related machines and mechanical devices.

Appellee's application was filed on November 22, 1938, and a substitute petition

and statement filed by him on January 9, 1939, states that he does business under the name of "Norma Chemical Company" and that he has used the mark "Norma" applied to boiler compounds, soot destroyers and rust solvents since May 1938.

Appellee introduced no evidence.

The only evidence introduced by appellant is a stipulation of facts from which it appears that in 1911 "The Norma Company of America" was organized as a corporation of New York; that in 1924 the name of the corporation was changed to "Norma-Hoffmann Bearings Corporation"; that since 1911 appellant has made and sold ball bearings, each stamped with the name "Norma", and that long prior to the date of filing of its notice of opposition it had applied the trade-mark "Norma" to "internal grinding spindles, balls and rollers of steel, gauges, instruments of precision, grinding, turning and polishing machines," and had sold the same so marked in interstate commerce; that for about ten years prior to 1939 it had extended in advertising the word "Norma" from $40,000 to $100,000 per year.

The stipulation also sets forth that since 1923 appellant has made a specialty of grease-packed bearings, and that as a result of research work begun about 1935 it has sold grease bearing the trade-mark "Norma." However, there is nothing in the stipulation respecting the time when such sale of grease began, and appellant's notice of opposition makes no reference to the sale of grease bearing the trade-mark "Norma."

There are but two issues raised by appellant's notice of opposition, viz., (1) whether ball bearings and bearing devices to which appellant applies its mark are of the same descriptive properties as boiler compounds, soot destroyers and rust solvents to which appellee applies his mark; and (2) whether, upon the facts of record, appellee's mark constitutes an appropriation of appellant's corporate name, forbidden by section 5 of said Trade-Mark Act, 15 U.S.C.A. § 85.

The Examiner of Interferences held that the goods to which the respective parties apply the mark "Norma" are not of the same descriptive properties within the meaning of that term as used in section 5 of said Trade-Mark Act, and that the use of the notation "Norma" by appellee did not constitute an appropriation of appellant's corporate name.

With respect to the stipulated fact that appellant has applied its mark to grease, the examiner held that this was not pleaded in its notice of opposition, and furthermore that the stipulation does not show that appellant has sold such goods at as early a date as that to which appellee is entitled.

The Commissioner of Patents, in affirming the decision of the Examiner of Interferences, stated:

"The opposition is predicated chiefly upon opposer's prior adoption, use, and registration of the same mark for ball bearings, roller bearings, and related machines and mechanical devices. The record discloses that opposer has also applied the mark to a grease for bearings; but, as pointed out by the examiner, such use was not pleaded in the notice of opposition, nor does it appear to have antedated applicant's first use of the mark on the goods set forth in the application. For either of these reasons the examiner was right in refusing to consider it as a basis for judgment.

"It is opposer's contention that rust solvents may be used to prevent the formation of rust on ball or roller bearings. There is no evidence to support this contention, and I doubt that the asserted fact is one of which judicial notice may properly be taken. But even were it proved I should still be constrained to agree with the examiner that neither rust solvents and bearings, nor any other of the goods to which the parties respectively apply the mark in question, possess the same descriptive properties within the meaning of the Trade-Mark Act.

"Another ground of opposition pleaded in the notice is that applicant's mark constitutes an appropriation of opposer's corporate name. Obviously such appropriation is only partial; and there is nothing in the record to indicate that the word 'Norma' alone would be likely to suggest 'Norma-Hoffmann Bearings Corporation' to the mind of the public, except in connection with the particular class of merchandise in which opposer deals."

■ We are in accord with the holdings of the Patent Office tribunals that upon the record made the goods of the respective parties do not possess the same descriptive properties, and that in determining that question appellant's use of its trade-mark upon grease may not be considered.

■ It may be unfortunate for appellant that a more complete factual record was not made, but we must pass upon the facts set forth in the record and those of which we may take judicial notice.

■ There is no proof respecting the use of rust solvents, and we cannot, in our opinion, take judicial notice that they are used for the prevention of rust. The term "rust solvents" indicates materials for the removal of rust after it is formed and nothing more.

There is nothing in the record before us from which we can hold that ball bearings and ball bearing devices in use are normally subject to rust formation; so far as ball bearings are concerned the contrary is suggested by the stipulated fact that appellant since 1923 has made a specialty of grease-packed bearings.

■ Therefore we are of the opinion that the purchasers of a rust solvent bearing appellee's mark would not be likely to conclude that appellant had produced such goods. In the case of Elgin American Manufacturing Co. v. Elizabeth Arden, Inc., 83 F.2d 687, 688, 23 C.C.P.A., Patents, 1168, we said: " * * * The real question confronting us is whether the goods of the respective parties are so related, commercially or otherwise, that, when marketed under the involved trademarks, the purchasing public might reasonably conclude that they originated with the same concern."

In our opinion goods used for the removal of rust are not so related to goods which in use normally do not rust that the concurrent use of the same mark upon rust solvents and upon ball bearings and ball bearing devices would be likely to cause confusion in the minds of purchasers as to the origin of the goods to which the mark is applied.

■ We next come to the consideration of the use by appellee of a part of appellant's corporate name. The leading case upon this subject is that of American Steel Foundries v. Robertson, 269 U.S. 372, pages 381, 382, 46 S.Ct. 160, at page 162, 70 L.Ed. 317, wherein it is stated: " * * * Where the appropriation of the corporate name is complete, the rule of the statute, by its own terms, is absolute, and the proposed mark must be denied registration, without more; but, where less than the whole name has been appropriated, the right of registration will turn upon whether it appears that such par-

tial appropriation is of such character and extent that, under the facts of the particular case, it is calculated to deceive or confuse the public to the injury of the corporation to which the name belongs."

Since, upon the question of whether the goods of the parties possess the same descriptive properties, we hold that confusion in origin of the goods is not likely from the concurrent use of the mark upon the goods of the respective parties, it follows that, in accordance with the rule stated in the case last cited, we must hold that the use of the mark "Norma" by appellee upon rust solvents would not deceive or confuse the public to the injury of appellant, to whom the name "Norma-Hoffmann Bearings Corporation" belongs.

In this opinion we have not discussed other goods, viz., boiler compounds and soot destroyers, to which appellee applies his mark, for the reason that it is obvious that such goods are not of the same descriptive properties as the goods to which appellant applies its mark, nor are they even remotely related thereto.

The decision appealed from is affirmed.

Affirmed.