QUALITY CHEKD DAIRY PRODUCTS ASSOCIATION, a Cooperative, and Brown Swiss Milk Company, Inc., a Corporation

v.

GILLETTE DAIRY OF the BLACK HILLS, INC., a Corporation.

Civ. No. 71–30W.

United States District Court, D. South Dakota, W. D.

Aug. 30, 1971.

Joseph M. Butler, Rapid City, S. D., for plaintiffs.

Horace R. Jackson, Rapid City, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

Quality Chekd Dairy Products Association, a Wisconsin cooperative, is the owner of the Quality Chekd trademark. The trademark is duly registered with the United States Patent Office under the Lanham Act. The trademark is used on various dairy products.

Brown Swiss Milk Company, Inc., is a South Dakota corporation which distributes dairy products primarily throughout the Black Hills area of South Dakota. By virtue of a licensing agreement, plaintiff's exhibit 23, Brown Swiss claims to be a licensee of Quality Chekd Dairy Products Association. As a licensee of Quality Chekd Dairy Products Association, Brown Swiss claims the express authority of Quality Chekd to use the Quality Chekd trademark on Brown Swiss' dairy products. Brown Swiss has paid dues regularly for ten years to the Quality Chekd Dairy Products Association for the continued use of the Quality Chekd trademark.

Gillette Dairy of the Black Hills is a South Dakota corporation which began processing and distributing dairy products throughout the Black Hills area of South Dakota in 1968. Gillette Dairy of the Black Hills is not a licensee of the Quality Chekd Dairy Products Association.

On May 17, 1971, Gillette Dairy began distributing its dairy products using the Quality Chekd trademark on the containers, as well as a design and color scheme similar to the milk containers of Brown Swiss. Brown Swiss then brought the pending action claiming trademark infringement and unfair competition.

■ The first question to be determined is whether Quality Chekd Dairy Products Association has a claim to the Quality Chekd trademark that is superior to that of Gillette Dairy of the Black Hills, the defendant, thus allowing it to claim trademark infringement. Quality Chekd Dairy Association introduced into evidence plaintiff's exhibits one through six which are registration certificates from the United States Patent Office. These certificates show ownership of the Quality Chekd trademark to be in the Quality Chekd Dairy Association. As the owner of the trademark, Quality Chekd Dairy Association has a subsisting and superior right to the trademark over Gillette Dairy which has shown no right in the trademark. Gillette Dairy marketed its lowfat milk and vitamin D milk in half-gallon containers that bore the Quality Chekd trademark and which bore a similar color scheme to the milk cartons marketed by licensees of Quality Chekd Dairy Association. The infringement of a trademark is present when another uses or imitates the trademark on his goods in such a manner that purchasers of the product are actually deceived or there is a likelihood of confusion, thus inducing consumers of the product into believing that the goods they are purchasing were marketed under the auspices of the trademark owner or licensee. American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619 (5th Cir. 1963); Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir. 1965); National Ass'n of Blue Shield Plans v. United Bankers Life Ins. Co., 362 F.2d 374 (5th Cir. 1966); Continente v. Continente, 378 F.2d 279 (9th Cir. 1967); Sweetarts v. Sunline, Inc., 380 F.2d 923 (8th Cir. 1967); Friend v. H. A. Friend & Co., 416 F.2d 526 (9th Cir. 1969); Procter & Gamble Co. v. Conway, 419 F.2d 1332, 57 C.C.P.A. 865 (1970). From the testimony given in court and from the marked similarity in milk cartons and the identical trademarks on both Brown Swiss Dairy products and Gillette Dairy products, the court finds there is a strong likelihood that the buying public will be confused when buying dairy products in the Black Hills area of South Dakota. The preservation of a trademark as a means of identifying products serves an important public purpose.

"It (trademark) makes effective competition possible in a complex, impersonal marketplace by providing a means through which the consumer can identify products which please him and reward the producer with continued patronage. Without some such method of product identification, informed consumer choice, and hence meaningful competition in quality, could not exist." Smith v. Chanel, Inc., 402 F.2d 562, 566 (9th Cir. 1968).

Therefore, Quality Chekd Dairy Products Association is entitled to an injunction to enjoin Gillette Dairy of the Black Hills from the unauthorized use of the Quality Chekd trademark.

Plaintiff Brown Swiss Milk Company is also entitled to an injunction enjoining Gillette Dairy of the Black Hills from distributing dairy products with the Quality Chekd trademark. 28 U.S.C.A. § 1338 states that the "district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under copyright, patent or trademark laws."

■ Brown Swiss claims that it is entitled to an injunction on the theory of either trademark infringement or unfair competition under 28 U.S.C.A. § 1338. To maintain an action for trademark infringement, Brown Swiss must establish that its claim to the Quality Chekd trademark is superior to the claim of Gillette Dairy of the Black Hills. Brown Swiss claims that it is a licensee of the Quality Chekd Dairy Products Association and thereby expressly licensed to use the Quality Chekd trademark in the Black Hills area. Gillette Dairy of the Black Hills maintains that Brown Swiss did not follow the proper procedure in obtaining a license from Quality Chekd Dairy Products As-

242

sociation to use and display the Quality Chekd trademark on Brown Swiss' dairy products containers. Gillette claims that Brown Swiss did not comply with the licensing procedure as specified in the articles of incorporation of the Quality Chekd Dairy Products Association. Brown Swiss maintains that it has a valid license because the executive committee of Quality Chekd Dairy Products Association voted to accept Brown Swiss as a licensee. The Quality Chekd Dairy Products Association also accepted dues from Brown Swiss for the use of the trademark and alleged in the amended complaint that Brown Swiss is a licensee entitled to use the Quality Chekd trademark.

■ Without deciding whether the license to Brown Swiss is valid, the court finds that the allegation of trademark infringement cannot be said to be plainly unsubstantial. The previous discussion of the validity of the license and the fact that both companies are using the identical trademarks, raises a substantial claim of trademark infringement.

■ "An allegation of infringement of a registered trade-mark, unless plainly unsubstantial, carries with it jurisdiction to determine an issue of unfair competition which is part of the general situation and not inherently a separate cause of action, even where the claim of infringement fails on the trial." Hanson v. Triangle Publications, 163 F.2d 74, 79 (8th Cir. 1947). See also Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 324–325, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Hurn v. Oursler, 289 U.S. 238, 240–244, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); L. E. Waterman Co. v. Gordon, 72 F.2d 272, 274 (2nd Cir. 1934). An allegation of trademark infringement under 28 U.S.C.A. 1338 is "substantial" for purposes of conferring jurisdiction upon the district court to rule on the related claim of unfair competition unless the claim of trademark infringement is clearly immaterial and made solely for the purpose of obtaining jurisdiction.

A. H. Emery Co. v. Marcan Products Corp., 389 F.2d 11 (2nd Cir. 1963). Because the claim of trademark infringement is clearly not frivolous and is substantial, the court will consider the related claim of unfair competition.

■ The issue of unfair competition must be determined with particular reference to the character of the business and the circumstances surrounding the competition between the parties. International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L. Ed. 211 (1918). In the instant case, the court is concerned with competition among two local dairies and their practices in packaging their products. To establish unfair competition Brown Swiss must show that there is a similarity in the competing milk containers produced by Gillette that is likely to mislead purchasers of ordinary caution and prudence into the belief that the goods are those, or that the name or business is that, of Brown Swiss. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1925); William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924). Unfair competition results where imitation causes confusion and results in deception of the customers of the complaining party. Corning Glass Works v. Jeanette Glass Company, 308 F.Supp. 1321 (S.D.N.Y. 1970); Smith v. Chanel, Inc., 402 F.2d 562 (9th Cir. 1968); General Adjustment Bureau, Inc. v. General Insurance Adjustment Co., 381 F.2d 991 (10th Cir. 1967).

■ In the immediate case Gillette Dairy of the Black Hills has copied the identical Quality Chekd trademark used by Brown Swiss Dairy for over ten years in the Black Hills area. The size, shape and coloring of the Quality Chekd trademark on Gillette's half-gallon containers of milk is identical to the size, shape and coloring of the Quality Chekd trademark on the Brown Swiss half-gallon milk cartons. Commencing on May 17, 1971, Gillette Dairy also began marketing half-gallon milk containers that

had the identical color scheme to the milk containers marketed by Brown Swiss. Because of the marked similarity of milk containers, the likelihood of confusion by the buying public is unquestionable.

By allowing Gillette Dairy of the Black Hills to continue to market its dairy products under the Quality Chekd trademark, the court would be allowing Gillette to reap the benefits of the advertising Brown Swiss has done concerning the Quality Chekd trademark during the period of time that Brown Swiss has used the Quality Chekd trademark. It would also allow Gillette Dairy to benefit from the good will established over the years by the Brown Swiss Milk Company with regard to the Quality Chekd trademark. Therefore, equity dictates that this form of unfair competition should cease. Gillette Dairy of the Black Hills shall be enjoined from simulating the carton design and color scheme utilized by the Brown Swiss Milk Company, as well as the Quality Chekd trademark utilized by Brown Swiss Milk Company.

The foregoing Memorandum Opinion shall constitute this court's findings of fact and conclusions of law.